IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN T. PATTIE, | ) | CASE NO. 5:13 CV 2096 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by John T. Pattie under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 29. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 13.

[4] ECF # 14.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Pattie, who was 40 years old at the time of the decision,[11] has a high school education[12] and has prior work experience as a factory laborer and a packer.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Pattie had the following severe impairments: bipolar disorder, obsessive compulsive disorder, anxiety disorder, and recurring headaches.[14]

After concluding that the relevant impairments did not meet or equal a listing,[15] the ALJ made the following finding regarding Pattie's residual functional capacity ("RFC"):

---

[6] ECF # 15.

[7] ECF # 18 (Pattie's brief); ECF # 25 (Commissioner's brief); ECF # 26 (Pattie's reply brief).

[8] ECF # 25-1 (Commissioner's charts); ECF # 22 (Pattie's charts).

[9] ECF # 18-1 (Pattie's fact sheet).

[10] ECF # 30.

[11] Transcript ("Tr.") at 23.

[12] *Id.* at 16.

[13] *Id.* at 22.

[14] *Id.* at 15.

[15] *Id.* at 15-16.

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple, routine tasks that do not involve arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety or welfare of others. He cannot perform piece rate work or assembly line work. The claimant is limited to only occasional interaction with coworkers and supervisors. He can have no contact with the general public.[16]

The ALJ decided that this residual functional capacity precluded Pattie from performing his past relevant work.[17]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the residual functional capacity finding quoted above,[18] the ALJ determined that a significant number of jobs existed locally and nationally that Pattie could perform.[19] The ALJ, therefore, found Pattie not under a disability.[20]

## C. Issues on judicial review and decision

Pattie asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Pattie's challenge presents the following issue for judicial review:

---

[16] *Id.* at 17.

[17] *Id.* at 22.

[18] *Id.* at 24.

[19] *Id.* at 23-24.

[20] *Id.* at 24.

The ALJ's RFC finding does not include a limitation to superficial interaction with coworkers and supervisors. Does substantial evidence support the ALJ's decision not to include the limitation in the RFC?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2.     *"Acceptable" and other medical source opinions*

The regulations[24] and Social Security Ruling 06-03p[25] set out the analytical framework for the ALJ's proper evaluation of opinions of medical sources not considered "acceptable."

Section 416.912 divides medical sources into "acceptable medical sources" and "other medical sources."[26] "Acceptable medical sources include licensed physicians or osteopaths and licensed or certified psychologists.[27] "Other medical sources" include nurse practitioners and physicians assistants.[28] This distinction has several implications in the evaluation of the opinions expressed by these sources.

---

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[24] 20 C.F.R. §§ 416.902, 416.913, 416.927(d).

[25] SSR 06-03p;  Title I II and XV: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45593 (Aug. 9, 2006).

[26] SSR 06-03p, at 45994.

[27] 20 C.F.R. § 416.913(a).

[28] *Id.* at § 416.913(d).

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. See 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d).
>
> Making a distinction between "acceptable medical sources" and medical sources who are not "acceptable medical sources" facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source.[29]

Although generally opinions from an "acceptable medical source" will receive greater weight than the opinion of a medical source, the opinion of a medical source may outweigh that of an acceptable source based on the particular facts of the case, applying the factors for weighing opinions in 20 C.F.R. § 416.927(d).[30] When the ALJ considers the opinion of a medical source other than an "acceptable" one, he must determine the weight given to that opinion and explain the reasons for the weight assigned in the decision.[31]

## B.     Application of standards

This case involves the narrow issue of whether an RFC that limits Pattie to infrequent interaction with coworkers and supervisors adequately encompasses the RFC assessment of

---

[29] SSR 06-03p, at 45594.

[30] *Id.* at 45595.

[31] *Id.* at 45596.

-6-

a state reviewing psychologist who noted that Pattie can relate well to others "infrequently and superficially."[32]

Essentially, Pattie argues that, because the VE testified that all the jobs suitable for Pattie would require more than superficial interaction with a supervisor during the initial 30-day training period,[33] including an RFC restriction on Pattie having no more than superficial interaction with supervisors, would necessarily preclude Pattie from performing any of the identified jobs and compel a finding of disability.

It is by no means certain that the state reviewing psychologist actually opined that Pattie's RFC should limit him to only infrequent and superficial interaction with others. As was confirmed at the oral argument, a review of the assessment of Irma Johnston, Psy.D., the state agency psychologist, does not clearly establish whether the statement at issue represents Dr. Johnston's own opinion as to Pattie's RFC or serves merely to state Dr. Johnston's summary of a report by consulting evaluating psychologist, James Sunbury, Ph.D. The situation is not clarified by a review of Dr. Sunbury's report, which discloses no reference to any limitation based on superficial interaction with others.[34]

But, even accepting that the current RFC restriction to "infrequent" interaction with supervisors and coworkers must be understood to include the concept of "superficial"

---

[32] Tr. at 629.

[33] *Id.* at 58. The VE testified that all of the jobs identified could be performed with the additional limitation of no superficial interaction after the 30-day training period. *Id.*

[34] *See*, *id.* at 365-69.

interaction as well, such a reading does not mean that any interactions required by a limited initial training period are, therefore, precluded by such an RFC.

This precise question has been recently addressed by a case in this District which then resolved the matter contrary to the position advanced by Pattie.[35] As here, Judge Adams noted in *Wright v. Commissioner of Social Security* that, despite the need for more than superficial contact with others during a training period, a VE's testimony that a claimant could otherwise perform the job within the terms of the stated RFC was a proper application of the RFC.[36] To hold otherwise, as Pattie now maintains, would, Judge Adams reasoned, mean that "every single time an individual is limited to superficial interactions with others, ... the claimant is entitled to benefits since training for a job necessarily involves more than superficial interaction with others. Such a result is untenable."[37]

Also supportive of this position taken in *Wright* are Magistrate Judge Burke's holding in *Harris v. Commissioner of Social Security*[38] and Magistrate Judge Knepp's decision in *Smith v. Commissioner of Social Security*.[39] In both of these recent cases, the Court

---

[35] *Wright v. Comm'r of Soc. Sec.*, No. 1:12 CV 1103, 2013 WL 3873947, at **2-3, 13-14 (N.D. Ohio Jul. 25, 2013) (Adams, J. adopting R&R of Knepp, M.J.).

[36] *Id.*, at *2.

[37] *Id.*, at *3.

[38] *Harris v. Comm'r of Soc. Sec.*, No. 1:13 CV 260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014) (Burke, M.J.).

[39] *Smith v. Comm'r of Soc. Sec.*, No. 5:11 CV 2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) (Knepp, M.J.).

determined that the adoption of an RFC limitation of only incidental interaction, despite a state agency reviewing psychologist's evaluation providing for a restriction on superficial interaction, is not reversible error.

Here, although Pattie acknowledges that this recent authority is directly contrary to his position, he nonetheless urges that these cases be rejected on the basis that they are wrongly decided and contrary to the regulations. For the reasons stated in both Magistrate Judge Knepp's Report and Recommendation in *Wright* and in Judge Adams's adoption of that R&R, I decline the invitation to disturb their conclusions.

As a secondary issue, Pattie argues that the ALJ improperly analyzed the opinion of Anthony Santora, a medical source that may or may not qualify as a treating source under the regulations. Santora has a doctorate in education and a license as a nurse practitioner. He had a treating relationship with Pattie, generated treatment notes, and prescribed medication. As Pattie admits, however, he did not offer an RFC opinion. I have generally reviewed Santora's treatment notes and find nothing in them as to a limitation to superficial interaction in addition to a limitation on occasional interaction.

In this instance, Pattie appears to try to argue that Santora is a treating source whose opinion was improperly analyzed under the treating source rubrics. Even assuming arguendo that Santora qualified as a treating source, I see nothing specific in his treatment notes that would support greater limitations than those adopted by the ALJ in the RFC finding. This would, therefore, at least be harmless error.

## Conclusion

For the reasons stated above, I conclude that substantial evidence supports the finding of the Commissioner that Pattie had no disability. The denial of Pattie's applications is, therefore, affirmed.

IT IS SO ORDERED.

Dated: June 3, 2014　　　　　　　　　　　　　　s/ William H. Baughman, Jr.
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge